# In the United States Court of Federal Claims

No. 11-690 C

(Originally Filed **Under Seal** December 20, 2011)

(Filed **Redacted** January 9, 2012)

| | | |
|---|---|---|
| SCIENCE APPLICATIONS INTERNATIONAL CORP., | ) ) | |
| Plaintiff, | ) ) | Post-award bid protest; standing; contents of the administrative record. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| MISSION ESSENTIAL PERSONNEL, LLC, | ) ) ) | |
| LINC GOVERNMENT SERVICES, L.L.C., | ) ) ) | |
| GLOBAL LINGUISTIC SOLUTIONS, LLC, | ) ) ) | |
| NORTHROP GRUMMAN TECHNICAL SERVICES, INC., | ) ) ) | |
| CACI PREMIER TECHNOLOGY, INC. and | ) ) ) | |
| L-3 SERVICES, INC., | ) ) | |
| Intervenor Defendants. | ) ) | |

*Joseph G. Billings*, Baltimore, MD, for plaintiff. *Alfred M. Wurglitz*, Rockville, MD, *Nathanael D. Hartland* and *Rita J. Piel*, Baltimore, MD, of counsel.

*Jacob A. Schunk*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director and *Seth W. Greene*, of counsel.

*Craig A. Holman*, Washington, DC, for intervenor defendant Mission Essential Personnel, LLC. *Stuart W. Turner*, *William S. Speros* and *Emma V. Broomfield*, of counsel.

*Sean D. Forbes*, Houston, TX, for intervenor defendant Linc Government Services, L.L.C. *Bryant S. Banes*, of counsel.

---

### OPINION AND ORDER [1/]

**Merow**, *Senior Judge.*

Plaintiff, Science Applications International Corp. ("SAIC") filed this post-award protest contesting the United States Department of the Army Intelligence and Security Command's ("INSCOM," "Army" or "Agency") decision not to award an indefinite delivery, indefinite quantity ("IDIQ") contract to SAIC for foreign language support services ("DLITE contract") and to award DLITE contracts to six other offerors. Plaintiff asserts that the Army's evaluations of SAIC's and other offerors' proposals were "irrational, arbitrary, unequal, and in violation of statutes and regulations." (Compl. ¶ 2, ECF No. 1.) The six awardees have intervened in this protest proceeding.

After the Administrative Record ("AR"), ECF No. 32, was filed, SAIC filed a motion seeking its completion. (ECF No. 33.) Oppositions to supplementing the AR were filed. (ECF Nos. 55, 58 & 59.) The defendant and two intervenors filed Motions to Dismiss contending SAIC cannot establish it had a substantial chance to receive an award and therefore lacks standing. (ECF Nos. 53, 56 & 57.) SAIC responded to the Motions to Dismiss and Replies were filed. (ECF Nos. 64-69.)

For the following reasons, the motion to supplement or complete the AR is **partially denied** and the Motions to Dismiss the Complaint are **denied**, the denial of the dismissal motions being without prejudice to renewal of positions therein in subsequent motions for judgment on the AR.

### Background

On December 2, 2010, INSCOM issued a Request for Proposal ("RFP") (No. W911W4-11-R-0003) for the provision of worldwide linguistic support for military operations and exercises for the Department of Defense Language Interpretation and

---

[1/] This Opinion and Order was originally filed under seal on December 20, 2011. (ECF No. 71). The parties were afforded an opportunity to propose redactions. On December 29, 2011, plaintiff filed proposed redactions and represented that no party objected. (ECF No. 73.) The court has adopted those redactions and accordingly is reissuing its Opinion and Order dated December 20, 2011, with the agreed redactions and some minor, non-substantive edits.

Translation Enterprise.  (AR 1-180.)  In addition to "Train and Sustain" contracts set-aside for small businesses, the Agency anticipated awarding multiple "Force Projection," IDIQ contracts for the "support of forces engaged in humanitarian, peacekeeping, contingency and combat operations without a well defined timeframe or quantity for delivery."  (AR 26, 721-22.)  After award, Task Orders with a cumulative value of up to $7.76 billion would then be competed among the selected IDIQ contractors.  (AR 3, 736.)

The source selection plan instructed selection board members not to make a comparative analysis of proposals, rather "[e]xamine each proposal individually in detail against the evaluation factors in [the source selection plan] and the Solicitation."  (AR 1570.)  In decreasing order of weight, the five evaluation categories were: (1) Management, (2) Technical, (3) Past Performance, (4) Socio-Economic, and (5) Price.  (AR 946-48, 1570.)  The other-than-cost factors, when combined, were more important than cost.  (AR 946.)  The Management category included the following four subfactors, also listed in decreasing order of importance: (1) Management Plan, (2) Staffing Plan, (3) Transition Plan, and (4) Security Plan.  (AR 948-49.)  The Technical category included the following subfactors: (1) IDIQ Technical Approach, (2) Sample Task Order Charlie ("STO-C") Technical Approach, and (3) Quality Control Plan ("QCP").  (AR 946-50.)

The RFP required the proposal: (1) "describe the process for . . . subcontractor management [and] . . . the assignment of responsibilities, division of work, and reporting procedures," (2) "[d]escribe the management approach and/or controls that will be implemented to ensure subcontractors perform seamlessly within the framework of the contract objectives," (3) "[d]escribe the approach to identifying sufficient quantity of linguists needed," and (4) "[d]escribe the plans, processes and procedures for controlling and reducing costs."  (AR 917-18.)

Only "acceptable" offers would be considered for an award.

To award a contract, the Government must have received an acceptable offer.  An offer is acceptable when it meets all of the material terms and conditions of the RFP, which includes the solicitation provisions, contract clauses, specifications, and documents, exhibits, and attachments.

(AR 907.)

Section M.3 instructed: "An offeror's proposal must accurately demonstrate an understanding of the objectives and scope of the program." (AR 946.)

Paragraph 6 of the RFP's Executive Summary advised that "[a]wards may be made from the initial offers without discussions. Therefore, initial proposals should contain the offeror's best terms from a management, technical, past performance, small business participation, and cost/price standpoint." (AR 721.)

Although the RFP did not identify the ranking system to be employed for the evaluation factors, adjectival ratings of "outstanding," "good," "acceptable," "marginal," and "unacceptable" were to be used for all but the cost factor. (AR 1573.) A rating of "unacceptable" would be given if a proposal contained "a major error(s), omission(s) or deficiency(ies) that indicates a lack of understanding of the problems or an approach that cannot be expected to meet requirements and none of these conditions can be corrected without a major rewrite or revision of the proposal." (*Id.*) "Weakness" was defined as a "flaw in the proposal that increases the risk of unsuccessful contract performance." (AR 2017.) A "significant weakness" was defined as "a flaw that appreciably increases the risk of unsuccessful contract performance." (*Id.*) "Deficiency" was defined as "[a] material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." (*Id.*)

INSCOM received eleven Force Projection proposals (AR 1992) which were reviewed by the Source Selection Evaluation Board ("SSEB"). (AR 1711-43.) Following review of the SSEB report, the source selection authority ("SSA") and the contracting officer awarded IDIQ contracts to: Mission Essential Personnel, LLC; Northrop Grumman Technical Services, Inc.; L-3 Services, Inc.; Global Linguistic Solutions, LLC; CACI Premier Technology, Inc.; and LINC Government Services, LLC. (AR 1991-98.)

The SSA's Source Selection Decision Document ("SSDD") concluded SAIC's proposal was "technically unacceptable" and therefore not eligible for an award:

> An unacceptable proposal is one that contains major errors, omissions or deficiencies that indicates a lack of understanding of the problems or an approach that cannot be expected to meet requirements and none of

-4-

these conditions can be corrected without a major rewrite or revision of
the proposal.   I agree with the SSEB findings that the various
weaknesses (and significant weaknesses) found in the proposal[] of
SAIC . . . are so great in quality and quantity that a complete rewrite
would be required to make their proposals acceptable for award.  A
proposal that is found to be technically unacceptable cannot form the
basis of award.  Therefore, I find that these proposals are not currently
eligible for award.

(AR 1995-96.)

On July 1, 2011, INSCOM notified SAIC that it was not awarded a contract
because its proposal was deemed unacceptable.  (Compl. ¶ 19, ECF No. 1-2.)  At
SAIC's request, INSCOM conducted an in-person, post-award debriefing on July 7,
2011.  (*Id.*; AR 2011-37.)

SAIC filed an agency-level protest on July 18, 2011.  (AR 2043-2173.)  On
August 22, 2011, INSCOM informed SAIC that the Agency had denied the protest.
(AR 2174-75.) On September 1, 2011, SAIC filed a GAO protest.  (AR 2174- 2238.)
SAIC is alleged to have abandoned its GAO protest after it learned that GAO had
denied a protest of another disappointed offeror. *KMS Solutions, LLC*, B-405323.2-
.3, 2011 CPD ¶ 209, 2011 WL 5115073 (Comp.Gen. Oct. 6, 2011).  The GAO also
rejected SAIC's attempts to conduct discovery into the proposals of the awardees.
On October 18, 2011, SAIC filed the instant Complaint.

Some review of the evaluations of the Agency is given for context,
understanding that the court is not at this time determining the merits of the protest.
Initially, as noted, evaluators did not base the adjectival ratings upon an offeror's
respective ranking or relative merit *vis-a-vis* other proposals. Rather, adjectives were
based only upon whether an individual proposal met the RFP's requirements and
whether there was sufficient detail to indicate feasibility of the offeror's approach and
an understanding of those requirements.  (AR 1572-74.)

In the Management category, SAIC's proposal was rated "unacceptable." (AR
1826-34.) Evaluation of subcategories included ▮▮▮ "significant weaknesses," ▮▮▮
"weaknesses," ▮▮▮ "strengths" and ▮▮▮ "significant strengths." The
▮▮▮▮▮▮rating was in the Security Plan subfactor of the Management Plan, the

least important component.   One significant weakness noted was the ███████
████████████████████████████████████████████████████████████████████.
(AR 1828, 2020.)   The RFP required a description of "the approach to identifying
sufficient quantity of linguists needed and subsequent, recruiting, hiring, screening,
and retaining of qualified personnel.   At a minimum, offerors shall describe the
necessary skill type and qualifications needed to meet the objectives." (AR 917.)
Another section of the RFP required that SAIC, "[d]escribe the approach to
identifying sufficient numbers of management, administrative, and linguist personnel
needed and subsequent approach to attracting, recruiting, screening, hiring, and
retaining personnel."  (AR 918.)  It was also provided that "[t]he offer will be
evaluated on the proposed approach to provide a fully qualified work force at contract
award as well as the offeror's demonstrated ability to recruit, train, and retain
sufficient numbers of linguists with required skill sets to support the DLITE
requirements." (AR 949.)

        The Army's evaluation observed ███████████████████████████████████
█████████████████████████████████████████████████████████████████████████
███ (AR 1831, 2020.)   The RFP required offerors to present their proposals for
responding to a sample task order, hypothetical to be sure, but representative of the
magnitude and scope of the Task Orders that could be competed among selected IDIQ
contractors. Vastly over-simplified, Sample Task Order "Charlie" was for the
provision of more than 7,000 linguists with specified language skills, to be deployed
within ninety days to a myriad of diverse locations worldwide.

        The Agency also concluded that SAIC's Management Plan, the most important
Management subfactor, failed to include or address several items, including███████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████. (AR 1827-28.)  The proposed use of ███
█████████████████████████████████████████████████████████████████████████
████████████████████████████████████ (AR 1827.)

        IDIQ contracts were awarded to six of the eleven offerors, the Agency
determining that the ratings of those six were markedly higher than the rest.  "[A]
clear quality break exists in the overall merit of offerors' proposals between the top
six offerors' proposals, and the bottom five proposals," noting that the top six
proposals were all rated "as Good or Acceptable for both the Management and

Technical evaluation factors – the two most important criteria – while the [bottom five proposals] were found to be Marginal or Unacceptable under one or both the Management and Technical evaluation factors." (AR 1995.)

## I.  Plaintiff's Motion to Complete the Administrative Record

Pursuant to the Order (ECF No. 14, filed October 19, 2011) the AR submitted to the court contains plaintiff's proposal and its evaluation by the Agency plus the Agency's evaluations of the proposals submitted by the six awardees, but does not contain the proposals submitted by the six awardees.  This occurred because several of the awardees objected to the inclusion of their proposals in the record of plaintiff's protest, which is addressed to its failure to obtain an IDIQ award and does not object to the six awards.  The October 19, 2011 Order indicated that plaintiff could raise the issue of adding the six proposals to the AR by motion and plaintiff has done so by filing its Motion to Complete the Administrative Record (ECF No. 33).

Intervenor awardees L-3, Linc Government Services, and Mission Essential Personnel oppose plaintiff's motion to include the awardees' proposals in the AR. (ECF Nos. 55, 58, and 59.)  Defendant does not oppose adding the proposals to the AR, but argues that SAIC's request is not meritorious.  (Def.'s Resp. 3, ECF No. 52.)

For the following reasons, plaintiff's request to add the proposals of the six awardees to the AR of this protest is rejected.

The primary reason for rejecting plaintiff's request to add the six awardees' proposals to the AR is the principle set forth in *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  The United States Court of Appeals for the Federal Circuit has instructed that this principle be applied to procurement protests which are, as here, reviewable pursuant to 28 U. S. C. § 1491 (b)(4).  *OMV Med., Inc. v. United States*, 219 F.3d 1337, 1344 (Fed. Cir. 2000).

The source selection plan directed that each proposal be examined individually against the evaluation factors in the plan and that proposals "[w]ill not be compared against each other at any point in the source selection process, except in comparing cost/price should the information be appropriate to assist the SSA and/or the KO

[contracting officer] in the performance of their responsibilities." (AR 1570.) The adjectival ratings for plaintiff's proposal, which led to the decision to deny an award and which did not involve "cost/price," were reached with no examination of, or comparison with, the six proposals at issue. (AR 1750.) For the court to consider or compare documents, such as the awardees' proposals, not relied upon by the Agency in reaching its no-award decision on plaintiff's proposal, would violate the applicable principle of judicial review set forth above.

Moreover, this is especially the case when it is considered that the Agency contemplated making up to ten awards, but only awarded six. If, on judicial review, the negative evaluation of plaintiff's proposal were determined to lack a rational basis such that an award to plaintiff might be appropriate, this would have no impact on the current six IDIQ awards. An award to plaintiff would not displace any of the current awards but would simply add a seventh IDIQ contract to carry out the procurement.

In short, the validity of any of the six IDIQ awards is not an issue in this protest. The awards are not subject to judicial review pursuant to the standards set in 28 U.S.C. § 1491(b)(4). This protest does not seek to overturn any of the awards. In resolving this protest there is no occasion to address whether there is, or is not, a rational basis for each, or for any, of the six awards which would be an issue if any comparison, contrary to the source selection plan, were to be involved. The proposals submitted by the six awardees were not considered in the process leading to the Agency's decision not to award plaintiff an IDIQ contract. Because there was no comparison of proposals involved in the adjectival rating process which resulted in the Agency's decision not to award an IDIQ contract to plaintiff, the proposals submitted by others also seeking an IDIQ contract in this procurement are simply irrelevant in determining the validity of plaintiff's protest. A complete AR on plaintiff's protest must comprise the material considered by the Agency in determining not to award an IDIQ contract to plaintiff, not material not considered.[2]

---

[2] Plaintiff also requests that individual evaluator worksheets be added to the AR. Initially, defendant responded the Agency reported that "[n]o such evaluator worksheets exist." (ECF No. 52 at 6.) Subsequently, the Agency located worksheets from a single day in late March 2011 and another day in mid-April 2011. (ECF No. 67 at 13.) Defendant opposes adding these worksheets to the AR noting that the decision not to award an IDIQ contract to plaintiff was reached on a consensus rating which is fully included in AR 1711-1990. The Source Selection Plan provided that "[w]orking papers will be destroyed when final evaluation is complete." (AR 1579.) The

(continued...)

## II.  Standing and Jurisdiction

SAIC challenges the Agency's determination that SAIC's proposal was unacceptable, therefore not eligible for an award.  Defendant and moving intervenors contend that because its proposal was determined to be unacceptable, SAIC cannot establish it had any chance, much less a substantial chance, for a contract award. Accordingly, the Motions to Dismiss conclude that SAIC has no standing and this court lacks jurisdiction.

The court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

While on its face, this post-award protest falls within this jurisdictional grant, as a threshold matter SAIC must establish prejudice for standing purposes. *Digitalis Educ. Solutions, Inc. v. United States*, No. 2011-5079, 2012 WL 12260, at *2 (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)); *see also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005); *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue .… [P]rejudice (or injury) is a necessary element of standing.")

"Interested party" in the jurisdictional grant of § 1491(b)(1) is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed. Gov' t Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2));

---

[2]/ (...continued)
worksheets which did survive were not considered in reaching the decision to deny an IDIQ contract award to plaintiff.  (ECF No. 67, Ex. 1, Declaration of Cpt. Carl Jason Bromley, ¶ 9.)  Thus, while it appears that these worksheets are irrelevant to a determination whether the Agency's no award decision has a rational basis, in the interests of obviating further controversy, it is concluded that any surviving worksheet or portion thereof, addressed to plaintiff's proposal shall be added to the AR. Worksheets, or portions thereof, addressed to proposals submitted by others shall not be included in the AR.

*see also Distrib. Solutions Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008); *Rex Serv. Corp.*, 448 F.3d at 1307; *Myers Investigative & Sec. Servs.*, 275 F.3d at 1369-70. To establish a direct economic interest, the protestor must establish that it had a "substantial chance" of a contract award. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Rex Serv. Corp.*, 448 F.3d at 1308.

As standing is a jurisdictional requirement, a protestor's failure to establish standing "precludes a ruling on the merits." *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 530 (2010) (citing *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir.2003)). "The corollary to this principle is that the Government cannot require a plaintiff to prove the merits of its case in order to demonstrate standing. Thus, it is a 'circular argument' to state that a plaintiff who is challenging a non-responsibility finding that must show its responsibility before it possesses standing to challenge the agency's conclusion it is not responsible." *Id.* (citing *Tip Top Constr. Co. v. United States*, No. 08-352, 2008 WL 3153607, at *11 (Fed. Cl. Aug.1, 2008); *Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 469 (2008)).

This initial prejudice examination is a "limited review."

In a post-award bid protest, before reaching the merits of the parties' dispute, the court conducts only a "limited review" of the plaintiff's allegations and the administrative record for the "minimum requisite evidence necessary for plaintiff to demonstrate prejudice and therefore standing." *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 392 & n.23 (2005); *see also McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 721 (2007). This threshold determination of standing should "require[] only that a protestor be (1) either a bidder or proposer that has been prevented from bidding or proposing due to some infraction other than the terms of the solicitation itself; or (2) either a bidder or proposer who would be in contention absent the unreasonable procurement decision or violation of applicable procurement regulations." *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 285 (2006); *see also Global Comp. Enters.*, 88 Fed. Cl. at 401. This approach "avoid[s] examining the parties' arguments on the merits in order to resolve standing." *Textron*, 74 Fed. Cl. at 285.

*Magnum Opus Techs.*, 94 Fed. Cl. at 530 n.12.

The court must accept the well-pled allegations in the complaint in determining prejudice for jurisdictional standing. *See, e.g., Info. Tech.*, 316 F.3d at 1319 (finding that standing was established assuming the protestor succeeded on its argued grounds); *USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 450 (2010); *Beta Analytics Int'l, Inc. v. United States,* 67 Fed. Cl. 384, 396 (2005) (same). *See also Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353-54 (Fed. Cir. 2011).

However, SAIC has the burden of establishing any challenged facts in this regard.

> In reviewing defendant's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the court assumes that the allegations in the complaint are true and construes them in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). If, however, defendant challenges plaintiff's allegations, then plaintiff bears the burden of proving facts sufficient to invoke the court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

*Magnum Opus Techs.*, 94 Fed. Cl. at 524-25.

Noted as the subject of confusion,[3] differences between prejudice for jurisdictional standing, and prejudice on a merits determination – "adjudicatory prejudice," were detailed in *Linc Government Services, LLC v. United States*, 96 Fed. Cl. 672 (2011) (characterizing the initial threshold as "allegational prejudice").

> The term "allegational" merely denotes the focus on a plaintiff's allegations of agency error and does not fix the plaintiff's evidentiary burden in demonstrating prejudice. As a central element of standing, the initial showing of prejudice "is not a mere pleading requirement 'but rather an indispensable part of the plaintiff's case'" in a bid protest. *Night Vision Corp.*, 68 Fed. Cl. at 391 (quoting *Lujan*, 504 U.S. at 561, 112 S. Ct. 2130). Accordingly, it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S. Ct. 2130. Allegations alone may suffice at the pleading stage, but concrete evidence is required at later stages. *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008). Even at the pleading

---

[3]    This confusion has sometimes led the court to forego the prejudice inquiry altogether, in the belief that only "[i]f the court finds error" in the procurement process does "it then examine[ ] whether the error was prejudicial to plaintiff." *Info. Tech. and Applications Corp., Inc. v. United States*, 51 Fed. Cl. 340, 346 (Fed. Cl. 2001) (dismissing the protest after finding no errors in the contested procurement), *aff'd*, 316 F.3d 1312, 1319 (affirming dismissal of the protest on the merits, but holding that the Court of Federal Claims' "approach was erroneous" in failing to examine prejudice before addressing the merits). In other cases, the court has wasted judicial resources adjudicating the merits of a bid protest that the plaintiff never had standing to bring in the first instance. *E.g., Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 605, 620 (2000) (holding that its "plaintiff failed to prove it was prejudiced by defendant's actions" and dismissing the protest, but only after deciding the merits), *aff'd*, 275 F.3d 1366, 1371 (affirming dismissal of the protest due to the plaintiff's failure to demonstrate prejudice, but on the ground that the plaintiff thus "did not have standing").

*Linc Gov't Servs., LLC v. United States,* 96 Fed. Cl. 672, 695 n.29.

stage, if facts foundational to the showing of allegational prejudice are challenged, a plaintiff must establish those facts by a preponderance of the evidence. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

96 Fed. Cl. at 695 n.28.

In this regard, SAIC asserts it had a substantial chance of being included in the group of awardees but for the Agency's improper evaluation both of its proposal as well as the awardees' proposals:

> SAIC also has standing because it was prejudiced by the Army's actions in this procurement--that is, SAIC had a "substantial chance" of receiving a contract if the Army had properly evaluated proposals. SAIC was prejudiced by the Agency's improper evaluation of SAIC's proposal and also by the improper evaluation of the awardees' proposals. If the Agency had performed proper evaluations, SAIC would have had an acceptable proposal that was better than one or more of the six awardees' proposals and therefore would have had a "substantial chance" to receive an award. Specifically, SAIC's proposal, at a minimum, would be a better value than the proposal submitted by CACI Premier Technology, Inc., which had the lowest technical rating of the six awardees and a higher price than SAIC.

(Compl. ¶ 15, ECF No. 1-2.)[4]

Paragraph 74 alleges error in its unacceptable rating:

> SAIC has a substantial chance of receiving the contract if the evaluation errors at issue in this protest are corrected. The Agency's evaluation of

---

[4] While correction of any established improper evaluations of plaintiff's proposal could conceivably raise its ratings to the point the proposal would be at the level which received IDIQ contracts in this procurement, given the Source Selection Plan prohibition on comparative evaluation, any improper evaluation, if any, of another's proposal would not be a relevant consideration in this regard.

SAIC's proposal as being "Unacceptable" and the Agency's best value determination were based on an arbitrary, unreasonable, and unequal evaluation of SAIC's proposal.

(*Id*. ¶ 74, ECF No. 1–19.)

Defendant argues SAIC lacks standing because its proposal was unacceptable and incomplete.  Linc advances similar positions, adding that even if successful, SAIC was not next in line for an additional award.  Mission Essential contends SAIC is simply unable to perform the contract, citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1371 (Fed. Cir. 2002) (holding that a protestor had no standing because, in part, "plaintiff has not provided the court with any evidence demonstrating that it has been awarded or successfully performed contracts for similar services in the past")(citing *Myers*, 47 Fed. Cl at 620).  "The mere fact that it might have submitted a bid in a competitive procurement is not sufficient.  Although it need not show that it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder.  This *Myers* has not done."  275 F.3d at 1370-71.  SAIC, it is argued, while having experience in very large government contracts, particularly in the information technology area, has no experience in providing these types of services – linguists – on an expedited and large scale basis.

SAIC does not disagree that this initial prejudice review is limited, not a merits review, citing *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 530 (2010).  However, responding to its "technically unacceptable" or "technically deficient" ratings as precluding jurisdiction under defendants' motions, SAIC responds that the definition of "unacceptable" given to SAIC's proposal differs from statutory, regulatory and case construction of "unacceptable" which requires material failures.  *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1038 (Fed. Cir. 2009) ("[A] proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations," quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996)).  According to SAIC, a solicitation term is material where it has more than a negligible impact on the price, quantity, quality, or delivery, and the matters cited by the Agency, regardless of their bona fides, were not material in that sense.  Moreover, the proposal found to be incomplete in *Bluestar Energy Services* cited by the defendant, failed to contain

prices, clearly a material requirement. In contrast, there is no suggestion that SAIC did not submit all the volumes required; and indeed, the lack of deficiencies in this regard was a specific rating by the Agency.

SAIC adds that, in its Complaint, weaknesses assessed against its proposal are refuted and instances of unequal and arbitrary treatment and analysis using unstated criteria are asserted along with allegations that portions of its proposal were ignored or simply misunderstood.[5] As the Source Selection Plan precludes comparative

---

[5] **Count I** contends that because the Army specifically found that SAIC's Management Proposal did not contain any deficiencies (weaknesses that posed either an unacceptable risk of unsuccessful contract performance or constituted material failures to meet the Army's DLITE requirements), it was arbitrary and unreasonable to rate it as "unacceptable." Because the evaluation lacked a rational basis, the Agency failed to meet the standard of review in 5 U.S.C. § 706(2)(A).

**Count II** alleges that the evaluation of its proposal was unreasonable, arbitrary and capricious and inconsistent with evaluation of proposals of others, particularly in that SAIC's proposal was (1) criticized for an allegedly ███████████ and (2) faulted for its ███████████ based on a basic misreading or incomplete reading of SAIC's proposal. The Complaint goes through great detail on instances of misreading and misunderstanding and citing criticism of certain ███████████ touted in other military contexts, particularly in the evaluation of Management and Technical factors which were the two most heavily evaluated categories. Count II concludes that the Agency standard of review failed to meet the standards of 5 U.S.C. § 706(2)(A), and if evaluations had been done properly, SAIC would have ranked more highly than CACI and other awardees.

**Count III** claims that some of the evaluation criteria were unstated – not contained in the RFP – for example criticism of SAIC's proposal included its ███████████ (which SAIC denies it proposed). However, even if it did, there was nothing in the RFP that forbid a ███ ███████████ . Other unstated evaluation criteria are posited. Comments on the proposal's weakness in the ███████████ the Complaint contends evaluators wrongfully applied STO Charlie, a huge contract as a hypothetical task order, when admittedly most of the task orders contemplated would be small to mid-sized. Improper import of past performance criteria into the management evaluation, and a requirement that key personnel be identified are also mentioned. Contravention of the Competition in Contracting Act by applying unstated evaluation criteria, as well as other violations of statutes and regulations, are concluded.

**Count IV** includes statements of unequal evaluation of SAIC's proposal compared to others. Nineteen different instances of unequal treatment are outlined as well as violations of several CFRs.

(continued...)

-15-

analyses, plaintiff's allegations of unequal treatment are problematic, but many other contentions were not challenged; accordingly, to that extent, allegational prejudice for jurisdictional purposes, which is all that is required at this preliminary jurisdictional determination, is unassailed.

In response to Mission Essential's point about asserted ███████████ ███████████ to perform this particular work, SAIC distinguishes *Myers Investigative & Security Services*, cited as requiring a showing of experience and ability. *Myers* was a protest of two sole source awards for guard services where the protestor, who had not submitted a proposal, made no effort to show ability to perform. In contrast, as SAIC points out, and neither the defendant nor the intervenors disagree, SAIC has managed IDIQ contracts in excess of $4.2 billion although in the information technology area.

SAIC concludes that its proposal was clearly within the zone of active consideration which satisfies standing, citing *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (2003) (finding standing assuming the protestor succeeded on its argued grounds).

In response to the standing arguments of Linc, SAIC distinguishes *Dismas Charities, Inc.*, cited by this intervenor for its point that SAIC cannot establish prejudice because its proposal failed to meet material requirements of the RFP. In *Dismas*, the material failure was a proposed 240-day start-up period when the solicitation required a 120-day start-up period where the time difference affected costs – clearly a material provision. *Dismas*, 75 Fed. Cl. at 61. Many of the same merits arguments are refuted by SAIC; many are asserted to be after-the-fact rationale, not cited by the Agency.

---

[5]/ (...continued)

**Relief requested** includes a declaration that each of the assessed "significant weaknesses" and "weaknesses" were improper and unreasonable. Management Factor adjectives should be changed from "unacceptable" to "good" or "outstanding," and Technical Factor adjectives adjusted from "acceptable" to "good" or "outstanding," along with a declaration that SAIC's proposal be rated higher than one or more of other awardees' proposals, and a preliminary and permanent injunction requiring the Army to reevaluate all proposals and an award of bid prep costs of more than ████ along with costs of suit.

In response to Linc's position that another unsuccessful bidder – Torres was, as ranked, more likely than SAIC to obtain any additional IDIQ contract that might be awarded, SAIC states that if the Army had evaluated SAIC's proposal properly, SAIC would have had an acceptable proposal that was better than one or more of the six awardees' proposals and therefore would have had a "substantial chance" to receive an award.[6/]

In reply, the government addresses merits arguments, couched in terms of not establishing a "substantial chance" of an award, concluding that for SAIC to possess standing, it must show that it can somehow overturn that reasoned decision that omissions in SAIC's management proposal "indicate a lack of understanding of the problems or an approach that cannot be expected to meet requirements" such that "none of these conditions can be corrected without a major rewrite or revision of the proposals."

The positions advanced – that the Agency did not act arbitrarily or capriciously in rating SAIC's proposal as unacceptable, therefore SAIC had no chance of an award, go to the merits of the controversy and it is this merits rigor that the Motions to Dismiss would require of SAIC at this threshold jurisdictional stage.  To be clear, questions of different definitions aside, while an unacceptable rating would preclude SAIC from further consideration, jurisdiction is not removed to examine the bona fides of that determination.  The Federal Circuit's direction that prejudice for subject matter jurisdiction must be reached "before addressing the merits," presupposes distinct inquiries, otherwise the standing prejudice has no vitality.  *Magnum Opus*, 94 Fed. Cl. at 530 (citing *Info. Tech.*, 316 F.3d at 1319); *see also Myers Investigative Sec. Servs.*, 275 F.3d at 1370.  The jurisdictional motions seek to remove those

---

[6/]  It is noted that the Agency reserved the option to revisit the group of awardees on an annual basis.

> The Government may assess annually whether to conduct an open season competition ("on ramp") to add additional contract holders or consider use of an "off ramp" process for contractors that perform unsatisfactorily and/or are unable to maintain cost control/effectiveness. The need for additional contract holders is discretionary with the Government and may be influenced by factors such as a lack of adequate task order competition, the need to enhance the pool of expertise for new task orders, or other causes as determined by the Contracting Officer.

(AR 3.)

distinctions and insulate subjective exclusionary evaluation conclusions from review. This result is not supported by relevant authority. *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009); *L-3 Comm'cns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 664 (2009); *Esterhill Boat Service Corp. v. United States*, 91 Fed. Cl. 483, 486 (2010); *Chenega Management, LLC. v. United States*, 96 Fed. Cl. 556, 571-72 (2010).

The Federal Circuit has addressed the error of conflating subject matter jurisdiction and the merits.

> Courts frequently confuse or conflate the distinction between subject matter jurisdiction and the essential elements of a claim for relief. *See, e.g., Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous."); *Moden v. United States*, 404 F.3d 1335, 1340 (Fed. Cir.2005). The Supreme Court's decision in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), is instructive. In *Bell*, the petitioners brought suit against FBI officers for alleged violations of their Constitutional rights under the Fourth and Fifth Amendments. *Id*. at 679, 66 S.Ct. 773. The respondents defended the district court's dismissal for lack of federal subject matter jurisdiction on the ground that, *inter alia*, the petitioners could not recover damages based on their Constitutional claims. *Id*. at 680–81, 66 S.Ct. 773. The Court disagreed and reversed the dismissal, holding that the petitioners' complaint adequately stated a claim arising under the Constitution of the United States and that "[j]urisdiction … is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Id*. at 682, 66 S.Ct. 773. Rather, the Court continued, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id*.; *see also MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 135–36, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)

> .…

> To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks.  To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect.  It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted.  *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed. Cir.1992).

*Engage Learning*, 660 F.3d 1346, 1353-54 (Fed. Cir. 2011); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir.1997) ("A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction."); *Liberty Ammunition, Inc. v. United States*, No. 11-84C, 2011 WL 5150221, at *5 (Fed. Cl. Oct. 31, 2011).

In *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008) the government agency added proposed acquisitions to an existing contract, and fulfilled its procurement need in a way that eliminated an opportunity for the protestors to compete directly for that contract. *Id*. at 1342-43. The incumbent contractor then engaged subcontractors for the product required by the agency, and the protestors were not among the companies chosen as subcontractors. *Id*. at 1343. The Federal Circuit held that the protestors had jurisdictional standing to protest the agency action, even though there was no direct solicitation by the agency for which they could compete. *Id*. at 1345. *See L-3 Comm'cns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 665 (2009) ("Whether L-3 will prevail on the merits of its disparate treatment argument is not a question of standing.").

While no merits decision is now before the court, SAIC's high burden in this regard is noted[7] and no solace should be taken in the jurisdictional decision reached herein. *See Vanguard Recovery Assistance Joint Venture v. United States*, No. 11-39C, 2011 WL 5928099 (Fed. Cl. Nov. 29, 2011) (finding non-prejudicial error on

---

[7] *See IBM Corp. v. United States*, No. 11-533C, 2011 WL 6005189 (Fed. Cl. Nov. 15, 2011) (denying merits of protestor's claims of error in adjectival ratings, disparate treatment and other claims in solicitation for IDIQ contracts for software and IT products for selection of up to fifteen awardees); *Standard Commc'ns, Inc. v. United States*, No. 11-530C, 2011 WL 5865873, at *7-8 (Fed. Cl. Nov. 22, 2011) (crediting agency rating determinations).

the merits) and 99 Fed. Cl. 81 (2011) (finding protestor had standing and the court had jurisdiction over those claims). However, upon analysis the Motions to Dismiss trend toward comprising a disguised shortcut to the merits of the protest. In this regard the validity of the "unacceptable" rating applied to SAIC's proposal is a merits-based determination, with mixed questions of law or fact coupled with deference to the Agency discretion. This is unlike finding whether an entity qualifies as a small business – an objective analysis – or other clearly disqualifying factor such as failure to submit a price proposal, failing to submit a proposal at all or filing late. *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 530 (2010)

Here, SAIC has also alleged numerous instances of action deemed arbitrary, capricious or an abuse of discretion in the rating of its proposal. The defendant and moving intervenors correctly observe that pursuant to the Source Selection Plan, each proposal was reviewed individually for the adjectival ratings, and not in comparison with others. Nevertheless, as noted, SAIC proposes to rely on a comparative analysis by alleging in several paragraphs of its Complaint that there was unequal treatment, inconsistencies and irregularities. While this court may well reject the merits of those claims, the court is reluctant to find at this preliminary point that it lacks jurisdiction to resolve all claims of evaluation error. No party claims SAIC was a rogue bidder or that the claims are frivolous, although some assertions come close. Rather, the argument made is that the Agency's review of SAIC's proposal was not arbitrary, capricious or an abuse of discretion. Challenges made and defenses thereto go to the ultimate merits of the protest and to honor the discretion of the Agency. For example, there is no claim that SAIC would not have standing if its claims that the Agency did not understand its proposal or ignored portions of its proposal (allegational prejudice) were to be proven (adjudged prejudice).

Moreover, whether or not SAIC had a substantial chance to be added to the group of awardees requires resolution of issues that are, at minimum, intertwined with, if not identical to, inquiries addressed to the merits of claimed evaluation errors which it is anticipated will be raised in motions for judgment on the AR. This counsels against determining the predicate error alleged at this stage in the proceeding. *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 678-79 (2007) ("When it appears to a court, however, that the jurisdictional facts are 'inextricably intertwined with the merits,' it may postpone their determination until trial when all relevant evidence may be considered at the same proceeding." (*citing Beuré-Co. v. United States*, 16 Cl. Ct. 42, 52-53 (1988), *Land v. Dollar*, 330 U.S. 731,

735-39 (1947) and *Kawa v. United States*, 77 Fed. Cl. 294, 304 n.4 (2007)); *Oswalt v. United States*, 41 Fed. Appx. 471 (Fed. Cir. 2002) (quoting Wright and Miller, 5A Federal Practice and Procedure § 1350 (2d ed. 1990) (unpublished) (finding error in the granting of a motion to dismiss for lack of jurisdiction where the issues were "intertwined with the merits of the case, [then] the decision on jurisdiction should 'await a determination on the merits.'").

For all the above stated reasons, it is **ORDERED**:

(1)  That the Motions to Dismiss (ECF Nos. 53, 56 & 57) for lack of standing are **DENIED,** without prejudice to consideration of the same or similar issues raised in motions for judgment on the AR pursuant to RCFC 52.1; and

(2) That plaintiff's motion (ECF No. 33) to complete the AR by adding the six awardee proposals is **DENIED**, but those surviving evaluator worksheets, or portions thereof, addressed to plaintiff's proposal shall be added to the AR.

s/ James F. Merow
James F. Merow
Senior Judge